ELLIS, Judge:
On September 13, 1979, plaintiff Big Gravel Company, Inc. entered into a contract with defendant Sidney Gremillion, reading, in pertinent part, as follows:
“This agreement is per our telephone conversation. We agree to pave the above referenced job with it being 1,850' by 21' and 700' by 13' of soil cement being 10% by volume and 6" in depth.
“We agree to overlay this with 2" of bituminous plant mix asphalt being 1,850' by 20' and 700' by 12'.
“It is agreed that the contract price for the above mentioned work will be $42,-280.00, with 95% of the total contract due upon completion of the work and the remaining 5% due in 30 days.”
After the work was completed, it was discovered that there was over 2,050 feet of 20 foot road and 1,032 feet of 12 foot road. Plaintiff therefore billed defendant for a total of $48,914.30, which was $6,634.30 more than the original contract. When de *1181 fendant refused payment, plaintiff filed a lien for the full amount against defendant’s property, and brought this suit for enforcement of the lien.
Defendant answered, pled the terms of the contract, and reconvened for damages allegedly suffered because of faulty workmanship. Plaintiff later amended its petition to plead, in the alternative, quantum meruit.
After trial on the merits, judgment was rendered in favor of plaintiff for $37,664.00, and defendant has appealed.
The testimony relative to the confection of the contract is in hopeless dispute. Plaintiffs witnesses testified that the contract was drawn based on dimensions furnished over the telephone by defendant. Defendant testified that Mr. Lawrence Wells of Big Gravel came to his home on more than one occasion, and took the dimensions of the subdivision roads off of the plat thereof. The trial judge made the finding, in his oral reasons for judgment, that changes in the contract were authorized after the contract was entered into. There seems to be no evidence to justify this conclusion.
Our review of the record leads us to the conclusion that the contract was drafted on the basis of measurements furnished by defendant and that work substantially in excess thereof was performed by plaintiff.
The contract called for soil cement to be worked into the road base to a depth of six inches, and for a two-inch overlay of asphalt on top of the base. Core samples taken about four months after completion of the roads showed an average thickness of 1.8 inches of asphalt and 3.78 inches of soil cement. Two expert witnesses testified that, based on the core samples, the base of the roadbed was granular rather than solid, and that the paving would not be satisfactory for that reason. Both stated that they saw flaws in the asphalt paving shortly after it was completed. Two other experts testified that they drove over the road a year after it was completed, and found it to be adequate. The road was, in fact, accepted for maintenance by the Pointe Coupee Parish Police Jury in December, 1980.
The trial judge found that defendant was not entitled to recover for repair or replacement of the road, because it had been accepted by the Police Jury and was no longer defendant’s property. He further found that the road had not been built in accordance with the contract specifications, but that it was usable and that plaintiff was entitled to recover for what it had done. The trial judge figured that the work done was 77% of the work called for by the contract, and gave plaintiff recovery for 77% of $48,914.31, or $37,664.00.
Defendant argues that the court erred in giving quantum meruit recovery under the above circumstances.
Articles 2763 and 2764 of the Civil Code provide:
“Art. 2763. When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner.”
“Art. 2764. An exception is made to the above provision, in a case where the alteration or increase is so great, that it can not be supposed to have been made without the knowledge of the owner, and also where the alteration or increase was necessary and has not been foreseen.”
Since the contract was based on erroneous measurements furnished by defendant, and since it was necessary to complete the entire job, rather than just the footage provided for in the contract, we find this case falls under the exception provided by Article 2764, supra. Certainly, defendant should be charged with knowledge of the extent of the job, and should not be permitted to profit from his own failure to inform plaintiff of the true extent thereof. The trial judge properly reformed the contract to cover the full extent of the work performed.
Defendant argues that plaintiff should not have been permitted to recover on a *1182 quantum meruit basis, apparently on the theory that the work was so imperfect as to be of no value to defendant.
Article 2769 of the Civil Code provides: “If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.”
This article has been interpreted by our courts as set forth in Neel v. O’Quinn, 313 So.2d 286 (La.App. 3rd Cir.1975), writ refused 319 So.2d 440 (La.1975):
“This codal provision has been construed by the courts to mean that when a contractor has ‘substantially performed’ a building contract, even though certain defects are present, he is entitled to recover the contract price, and the owner is relegated to having the price reduced by the amount necessary to perfect or complete the work, i.e. damages attributable to the breach. [Citations omitted].
“In turn, if the building contract has not been substantially performed, the contractor’s recovery is limited in quantum meruit. In the same regard, if the defects are such that cannot be corrected except by removing and replacing the construction, under the jurisprudence the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. In addition, the owner is entitled to damages. [Citations omitted].
“Thus the essential question for determination in a building contract suit is whether the contract has been substantially performed. The burden of showing same is on the contractor trying to recover the contract price or the balance due thereon.
“Substantial performance is said to exist when the house (or other construction) may be used for the purpose intended even though certain defects or omissions in construction exist.”
The trial court found that the work done on the road was not done in accordance with the specifications in the contract. He then awarded 77% of the total amount of the contract, as reformed, which he found to be the proportion of work actually performed.
From this we conclude that he did not believe there was substantial performance of the contract, since his award was based on quantum meruit rather than the contract price.
After a careful review of the record, we are unable to say that the trial judge was manifestly erroneous or clearly wrong in his conclusion in that respect.
Nor can we say that he abused his discretion in finding the value of the work performed by plaintiff to be 77% of the total amount of the contract, as reformed. The road was accepted by the Police Jury for maintenance, and showed no substantial deterioration in June, 1981, when the case was tried over a.year and a half after it was completed, so that substantial value resulted from the work performed by plaintiff.
The judgment appealed from is therefore affirmed, at defendant’s cost.
AFFIRMED.